FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D N.Y

★ AUG 27 2010 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

IDAN COMPUTER, LTD.,

            Plaintiff,

   -against-

INTELEPIX, LLC,

            Defendant.
----------------------------------------X

ORDER
CV-09-4849(SJF)(ARL)

FEUERSTEIN, J.

On or about November 9, 2009, plaintiff Idan Computer, Ltd. ("plaintiff") commenced this action against defendant Intelepix, LLC ("defendant"), pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332, seeking injunctive relief, an accounting and damages based upon defendant's alleged breach of the parties' settlement agreement dated February 14, 2007 ("the Settlement Agreement") and unfair competition. Pending before the Court is defendant's motion seeking the appointment of a special master under Rule 53 of the Federal Rules of Civil Procedure and a stay of discovery. For the reasons stated herein, defendant's motion is denied.

I.    BACKGROUND

On or about March 17, 2004, the parties entered into an "Agreement in re: Proprietary Software" ("the Software Agreement") pursuant to which, *inter alia*, plaintiff agreed to assign to defendant the copyrights and related intellectual property rights in its "Oblivision" computer software and to provide to defendant a copy of the source code for such software. (Amended Complaint [Compl.], ¶ 12, Ex. A ¶ 2.1). Pursuant to the Software Agreement, plaintiff retained the right to reacquire the copyrights and related intellectual property in its Oblivision computer

1

software ("the Right of Reversion") and to exercise the Right of Reversion "at its sole option, in the event that [defendant] fail[ed] to satisfy the performance requirements set forth in [the Software Agreement]." (Compl., Ex. A ¶¶ 3.2, 3.3). Upon plaintiff's exercise of its Right of Reversion, the Software Agreement would be terminated. (Compl., Ex. A ¶¶ 3.3, 4.2.1).

On March 17, 2004, plaintiff assigned the copyrights and its rights in the Oblivision computer software in accordance with the Software Agreement. (Compl., Ex. A).

On October 11, 2006, defendant commenced an action against plaintiff in this court, which was assigned to me under docket number cv-06-5514 ("the 2006 action"), seeking damages for breach of contract and breach of an express warranty and judgment declaring, *inter alia*: (1) that plaintiff breached the Software Agreement by, among other things, failing to provide defendant with the source code for each of the Oblivision works and by providing defendant with pirated software, insofar as defendant alleged that the "triangulation algorithm," which is purportedly an essential component of the software, was the property of a third-party, not of plaintiff, (Complaint in the cv-06-5514 action [2006 Compl.], ¶¶ 12-16); (2) that defendant was not entitled to exercise its Right of Reversion; and (3) that defendant retained all rights, title and interest in the Oblivision intellectual property. In its answer to the 2006 complaint, plaintiff asserted counterclaims against defendant seeking, *inter alia*: (1) judgment declaring that the Software Agreement was terminated by reason of plaintiff's exercise of its Right of Reversion and that the rights to the Oblivision software had reverted to plaintiff; (2) specific performance of the Software Agreement requiring defendant to execute instruments of assignment transferring all rights to the Oblivision software to plaintiff; (3) injunctive relief enjoining defendant from, among other things, using, selling or disclosing all copyrighted work, trade secrets or intellectual property of plaintiff and using plaintiff's name; (4) the imposition of a constructive trust on all software developed by defendant

while it was obligated to market plaintiff's software; and (5) damages for breach of contract and false advertising. Plaintiff also sought a preliminary injunction and partial summary judgment on its counterclaims.

Thereafter, on February 14, 2007, the parties entered into a Settlement Agreement with respect to the 2006 action pursuant to which, *inter alia*, defendant agreed: (1) to assign to plaintiff all copyrights in the Oblivision software, among other things; (2) to refrain from using plaintiff's or the Oblivision names; (3) to "ensure that all copies of all data and images previously provided by [plaintiff] to [defendant] in connection with the [Software] Agreement, * * * shall, when displayed, bear a legend 'image courtesy of Idan Computers, Ltd.'," (Compl., Ex. B, p. 3); (4) that all software products defendant sold, licensed, marketed, etc., would "be developed exclusively by or for [defendant] and will not contain any code from, or be a derivative work of, any software assigned under the [Software] Agreement, and will not be the result of reverse engineering or decompiling the same," (id., pp. 3-4); (5) that plaintiff "may [at its own expense] appoint a third party (the "Reviewer") to review the source code for [defendant's] software to verify that it does not contain any code from, and is not a derivative work of, any software assigned under the [Software] Agreement, and is not the result of reverse engineering or decompiling the same," (id., p. 4); and (6) to return to plaintiff "all materials in its possession * * *, retaining no copies," (id., p. 5). In addition, the parties agreed that plaintiff "shall be entitled to specific enforcement of the terms and provisions of [the Settlement Agreement]." (Compl., Ex. B, pp. 9-10).

On or about November 9, 2009, plaintiff commenced this action against defendant seeking: (1) injunctive relief enjoining defendant from using or allowing others to use (a) plaintiff's data and codes (Compl., ¶¶ 30-32), and (b) plaintiff's images and video to compete with plaintiff, (Compl., ¶¶ 37-41); (2) an accounting and disgorgement of all benefits defendant incurred by

3

reason of its use of plaintiff's data and codes, (Compl., ¶¶ 33-34); and (3) monetary damages for defendant's alleged breach of the Settlement Agreement and unfair competition, (Compl., ¶¶ 35-36, 42-44). Plaintiff claims that defendant has continued to use certain video images and datasets created by or for plaintiff and has marketed software plaintiff believes to be a reverse engineering, or copy, of its Oblivision software. (Compl., ¶ 2). Specifically, plaintiff alleges that in October 2009, it discovered that "North Vector," a partner of defendant, (Compl., ¶ 29), was using video and datasets created by or for plaintiff, (Compl., ¶ 26), and that defendant's "Indigo-i" software was created by reverse engineering, or copying, of the Oblivision software, (Compl., ¶¶ 27-28).

Defendant now moves for the appointment of a special master under Rule 53 of the Federal Rules of Civil Procedure and for a stay of discovery pending the determination of the special master regarding whether there is any evidence that defendant copied and/or reverse engineered the source code of plaintiff's Oblivision software.

II.   ANALYSIS

Defendant seeks the appointment of a special master in this case to compare the source codes of its Indigo-i software and plaintiff's Oblivision software in order to determine whether defendant reverse engineered or copied the Oblivision software, prior to undertaking "intrusive, costly, time-consuming and unnecessary discovery on tangential issues relating to [defendant's] proprietary Indigo-i software while putting off resolution of the true and determinative issue-whether there has been copying or reverse engineering." (Defendant's Letter Motion dated May 10, 2010 [Def. Mot.], p. 3).

Rule 53(a)(1) of the Federal Rules of Civil Procedure provides:

> "Unless a statute provides otherwise, a court may appoint a master only to: (A)

4

perform duties consented to by the parties; (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by: (i) some exceptional condition; or (ii) the need to perform an accounting or resolve a difficult computation of damages; or (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."

Subparagraphs (A) and (B) are clearly not applicable. Thus, a special master may only be appointed if the Court is unable to "effectively and timely" address the pretrial issues in this action.

Furthermore, Rule 53(a)(3) provides that "[i]n appointing a master, the court must consider the fairness of imposing the likely expense on the parties and must protect against unreasonable expense or delay." The appointment of a special master is the exception, not the rule. See, e.g. Duvall v. EcoQuest, Intern., Inc., No. 4:06cv1168, 2008 WL 4890570, at * 10 (E.D. Mo. Nov. 12, 2008); Cintron v. Vaughn, No. 3:69 cv 13578, 2007 WL 4225790, at * 2 (D. Conn. Nov. 28, 2007); Inventory Locator Service LLC v. Partsbase, Inc., No. 02-2695, 2006 WL 1646091, at * 2 (W.D. Tenn. June 14, 2006); see also Ash Grove Cement Co. v. Wausau Ins. Co., No. 05-2339, 2007 WL 689576, at * 3 (D. Kan. Mar. 1, 2007) ("The Advisory Notes to the 2003 Amendments to Rule 53(a)(1) indicate that, 'A master should be appointed only in limited circumstances[,]' * * * [and] 'only when the need is clear.'")

Defendant has not established a clear need for the appointment of a special master in this case at this time. Although the ultimate determination of whether defendant's Indigo-i software was created by reverse engineering or copying plaintiff's Oblivision software may require technical expertise in comparing the software source codes which is beyond the competency of a layperson or this Court, that issue can effectively be resolved through the parties "joint consultation with experts," Kansas v. Colorado, 543 U.S. 86, 94, 125 S.Ct. 526, 160 L.Ed.2d 418 (2004), and submission at trial of the experts' opinions, which is the ordinary procedure in cases involving

5

technical or specialized knowledge beyond the competency of a layperson. See Fed. R. Evid. 702. Moreover, defendant indicates that it has agreed "to be bound by whatever decision [a] software expert makes," (Def. Mot., p. 2), thus further vitiating any need for a special master in this case.[1]

Defendant's reliance on RGIS, LLC v. A.S.T., Inc., No. 2:07-CV-10975, 2008 WL 186349 (E.D. Mich. Jan. 22, 2008), is misplaced since that case involved claims of copyright infringement which are more complex than the claims for breach of contract and unfair competition that are asserted in this case. In any event, the holding of a magistrate judge from the Eastern District of Michigan is not binding upon this Court. Since the Court is able to timely and effectively address all pretrial matters in this action, and considering the likely expense and delay resulting from the appointment of a special master, see Fed. R. Civ. P. 53(a)(3), defendant's application for the appointment of a special master is denied.

Moreover, in addition to its claims based upon reverse engineering and copying of the Oblivision software, plaintiff also asserts claims for breach of contract and unfair competition based upon defendant's alleged use of a video and datasets created by plaintiff. Defendant offers no justification for delaying discovery and the resolution of this action based upon the alleged complexity of only one (1) of the claims in the complaint. Although defendant only seeks a stay of discovery "relating to software and source code," such piecemeal discovery will only lead to delay and unnecessary discovery disputes, e.g., issues regarding whether particular discovery relates to a specific claim.

In addition, defendant has not disputed plaintiff's contention that a determination of

---

[1] To the extent defendant's application is based upon plaintiff's failure to cooperate in an expert review to date, it bears noting that plaintiff will likely be unable to establish its reverse engineering claims absent any expert review of the software's source codes.

whether the Indigo-i software was created by reverse engineering or copying the Oblivision software requires more than just a comparison of the software's source codes and, thus, that discovery on the reverse engineering issue itself is also required before that issue can be resolved.

III. CONCLUSION

For the reasons set forth herein, defendant's motion for the appointment of a special master and to stay discovery is denied. To the extent plaintiff seeks to compel defendant's compliance with discovery, that application is denied without prejudice to renewal before Magistrate Judge Lindsay, to whom all non-dispostive pretrial matters have previously been referred. In light of Magistrate Judge Lindsay's extension of time to complete discovery, the pretrial conference scheduled before me on December 7, 2010 is adjourned until February 11, 2011 at 11:15 a.m.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: August 27, 2010
Central Islip, New York